UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEW RIVER ELECTRICAL, CORPORATION | : : : | |
| Plaintiff, | : : | |
| v. | : : | No. 3:09CV192 (MRK) |
| BLAKESLEE ARPAIA CHAPMAN, INC., | : : : | |
| Defendants. | : : | |

**RULING AND ORDER**

Plaintiff New River Electrical Corp. ("New River"), an electrical contractor, has brought suit against Blakeslee Arpaia Chapman, Inc. ("Blakeslee") for alleged violations of a subcontract ("the Subcontract") related to a construction project. New River is seeking to be indemnified for costs incurred remedying damage purportedly caused by Blakeslee. *See* Compl. [doc. # 1]. For its part, Blakeslee has filed a counterclaim alleging that New River owes it money under the Subcontract. *See* Counterclaim [doc. # 15]. New River has now filed a Motion to Stay Pending Arbitration and Motion to Compel Arbitration [doc. # 26] ("Pl.'s Mot."), arguing that the Subcontract requires the parties to arbitrate all disputes arising out of it. *See* Mem. in Supp. of Pl.'s Mot. [doc. # 27]. Blakeslee responds that New River has waived its right to arbitrate and that this Court lacks jurisdiction to compel arbitration because New River did not adhere to the express terms of the arbitration clause in the Subcontract. *See* Def.'s Mem. in Opp'n [doc. # 30]; Def.'s Sur-Reply [doc. # 33]. New River counters that Blakeslee has not been prejudiced by any delay and that any challenge to jurisdiction must be submitted first to the arbitrator. *See* Pl.'s Reply [doc. # 31]. The Court held oral argument to consider the issue on December 11, 2009. For the reasons that follow,

the Plaintiff's Motion to Stay Pending Arbitration and to Compel Arbitration [doc. # 26] is GRANTED.

**I.**

The facts related to New River's motion are mostly undisputed. New River entered into the prime contract with Northeast Utilities Service Company on August 31, 2005. Less than two weeks later, New River and Blakeslee signed the Subcontract, under which Blakeslee agreed to construct a jacking and bore pit for the installation of certain electrical lines. Article 6 of the Subcontract contains the following provisions regarding mediation and arbitration:

> § 6.1 MEDIATION
>
> § 6.1.1 Any claim arising out of or related to this Subcontract . . . shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party. Mediation shall take place in Roanoke, Virginia.
>
> § 6.1.2 The parties shall endeavor to resolve their claims by mediation . . . . Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.
>
> . . . .
>
> § 6.2 ARBITRATION
>
> § 6.2.1 Any claim arising out of or related to this Subcontract . . . shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1.
>
> § 6.2.2 Claims not resolved by mediation shall be decided by arbitration which shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. . . . The arbitration shall take place in Connecticut.

> § 6.2.3 A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

Subcontract, Ex. A to Mem. in Supp. of Pl.'s Mot. [doc. # 27].

On or about August 26, 2006, New River discovered the damage it claims is Blakeslee's fault; three days later, New River stopped payment on a progress payment to Blakeslee, and it is that stop payment order that forms the basis for Blakeslee counterclaim. On August 20, 2008, the parties agreed to toll the statute of limitations until October 1, 2008; that agreement was later extended until December 1, 2008, and then until January 31, 2009. *See* Tolling Agreement & Amendments, Ex. 1 to Pl.'s Reply [doc. # 31]. On January 30, 2009, New River filed this lawsuit, but delayed serving process until May 22 because the parties were arranging a mediation. On June 6, both New River and Blakeslee filed a Joint Motion to Stay Pending Mediation [doc. # 9], requesting a stay until 30 days after the mediation or until August 28. The Court granted the joint motion on June 8. *See* Order [doc. # 10].

The mediation was held on July 27, but it was unsuccessful. On August 19, Blakeslee filed an arbitration demand regarding New River's stopping of the Blakeslee progress payment. *See* Demand for Arbitration [doc. # 27-2]. On August 28, Blakeslee filed a counterclaim in this case with essentially the same allegations. *See* Counterclaim [doc. # 15]. A month later, Blakeslee filed an Answer and Affirmative Defenses, which asserts as its first defense that "Plaintiff's claims are barred by § 6.2 of the Subcontract . . . , which provides that any claim arising out of said Subcontract shall be subject to arbitration." Def.'s Answer [doc. # 20] at 6.

On October 19, New River filed the present motion, requesting the Court to enter an order

under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, compelling Blakeslee to arbitrate the parties' disputes; and to stay this proceeding pending that arbitration under Section 3 of the FAA, 9 U.S.C. § 3.

## II.

The FAA, 9 U.S.C. § 1 *et seq.*, expresses a "strong policy in favor of rigorously enforcing arbitration agreements." *Doctor's Assocs. v. Hamilton*, 150 F.3d 157, 162 (2d Cir.1998). The FAA's enforcement procedures are found in Section 4, which permits a party to an arbitration agreement to petition any U.S. district court that, in the absence of the agreement, would have subject matter jurisdiction to hear the dispute for an order compelling arbitration. *See* 9 U.S.C. § 4. District courts in this Circuit then apply a two-part test to determine if the claims are arbitrable, looking first to see "whether the parties agreed to arbitrate disputes at all," and second, "whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also ACE Capital*, 307 F.3d at 29 ("[W]here . . . the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability."). Section 3 of the FAA, 9

U.S.C. § 3, permits a court to stay proceedings pending arbitration, and the Second Circuit has been clear that in light of the "liberal federal policy favoring arbitration agreements," district courts should ordinarily grant a stay when it decides that a dispute should be arbitrated rather than dismissing the action, the latter of which can cause further delays by triggering appeal rights. *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002).

### III.

There is no dispute that the arbitration agreement here is valid or that, but for Blakeslee's particular challenges, the clause would encompass the substance of the parties' claims and counterclaims. In its Memorandum in Opposition [doc. # 30], Blakeslee raises two arguments. First, it argues that New River waived its right to arbitrate: (a) by intentionally choosing to pursue this claim in federal court despite the agreement to arbitrate; *see* Def.'s Mem. in Opp'n [doc. # 30] at 5-7; and (b) by failing to adhere to the express terms of the arbitration agreement, *see id.* at 8-13. Second, Blakeslee argues that this Court lacks subject matter jurisdiction to compel it to arbitrate five of the eight claims in the Complaint because New River's untimely arbitration demand renders those claims beyond the scope of the arbitration agreement. *See id.* at 13-15.

In its Reply Memorandum [doc. # 31], New River contends that Blakeslee has not and cannot meet the test for waiver laid out by the Second Circuit in *PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). That test instructs courts considering a waiver argument to examine: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." New River asserts that Blakeslee either consented to or caused all delays in this case to date; that there has been no virtually no activity in the litigation; and that the fact that Blakeslee itself

5

has filed a demand to arbitrate its counterclaim demonstrates that it would not be prejudiced by the enforcement of the arbitration clause. *See* Pl.'s Reply Mem. [doc. # 31] at 2-4. New River also argues that any statute of limitations and jurisdictional challenges must be submitted to the arbitrator. *See id.* at 5-6.

In its Sur-Reply, Blakeslee counters that the delays and the amount of litigation thus far are sufficient to meet the test for waiver. *See* Def.'s Sur-Reply [doc. # 33] at 1-2. Further, Blakeslee claims that it has been prejudiced by having to expend resources defending this suit, and that compelling it to arbitrate now would mean forcing it to bear the costs of New River's indecision. *See id.* at 2-3. As for the possible expiration of the statute of limitations of five of the claims, Blakeslee seeks to clarify that it is not arguing that New River is barred from *litigating* those claims, but rather that (1) New River is barred from compelling arbitration of them because the failure to adhere to the express term of the arbitration agreement constitutes waiver under *Batter Building Materials Co. v. Kirschner*, 142 Conn. 1 (1954); and (2) the Court lacks subject matter jurisdiction to compel arbitration of those five claims because they fall beyond the temporal scope of the parties' agreement. *See* Def.'s Sur-Reply [doc. # 33] at 5-6.

**IV.**

The Court agrees with New River that it has not waived its right to insist on arbitration. The Second Circuit has cautioned that "waiver of arbitration is not to be lightly inferred," and that "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *PPG Industries*, 128 F.3d at 107 (citations and internal quotation marks omitted); *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) ("Whether or not there has

been a waiver is decided in the context of the case, with a healthy regard for the policy of promoting arbitration.").

As for the first factor – "the time elapsed from the commencement of litigation to the request for arbitration," *PPG Industries*, 128 F.3d at 107 – approximately 8.5 months passed between when New River filed its complaint and when it filed its motion to compel arbitration. That duration is somewhat misleading, however, because the case was not active for a majority of that time. In fact, after excluding the time the case was stayed – at the joint request of both parties – and the period between the filing of the complaint and service thereof, this case has been active for just 10.5 weeks. But even the entire 8.5 months, without more, is insufficient to constitute waiver. *See, e.g., Rush v. Oppenheimer*, 779 F.2d 885 (2d Cir. 1985) ("It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate, for in addition, prejudice to [Plaintiff] must be demonstrated."); *see also PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 108 (2d Cir. 1997) ("This five-month delay, by itself, is not enough to infer waiver of arbitration. Rather, we must consider the delay in conjunction with [the other two factors].").

On the second factor, the amount of litigation that has taken place, there has been virtually none. There have been no substantive motions and the parties have yet to begin discovery. Therefore, this factor cannot support a waiver argument. *See, e.g.*, *Wisch v. Freedom Yachts, Inc.*, No. 04CV347, 2004 WL 3048759, at * 1 (D. Conn. Dec. 31, 2004) ("[D]efendants' limited participation through the filing of a motion to dismiss did not constitute a waiver. There has been no discovery nor other significant participation by defendants in the litigation."); *cf. In re S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82 (2d Cir. 1998) (affirming denial of motion to

compel arbitration because defendant had not raised arbitration clause as an affirmative defense in its answer and had engaged in discovery for over a year); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25-27 (2d Cir. 1995) (same, because defendant had engaged in extensive discovery and had filed substantive motions).

Finally, and most importantly, Blakeslee has not shown that it would be prejudiced by being compelled to arbitrate its disputes with New River. "The key to waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 159 (D. Conn. 2005) (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir.2003)). The Second Circuit has defined prejudice as "the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997). The only sources of prejudice that Blakeslee claims are the "unnecessary delay and needless expense caused by New River's long wait and contradictory conduct before it finally decided to seek arbitration." Def.'s Sur-Reply [doc. # 33] at 3.

For support of this argument, Blakeslee quotes *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) for the proposition that "[s]ufficient prejudice to infer waiver has been found when a party [that] seeks to compel arbitration . . . delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." But the facts in *Slone*, in which the Second Circuit affirmed a denial of a motion to compel, are dramatically different from this case. There, the defendant had filed a motion to compel arbitration shortly after the litigation began, which was denied. However, instead of filing an interlocutory appeal pursuant to Section 16(a) of the FAA, 9 U.S.C. § 16(a)(1), he

8

proceeded to litigate the case for the following three years, during which he took two depositions, engaged in other discovery, and filed several substantive motions (including a motion for summary judgment). *See Slone*, 4 F.3d at 179-80. In fact, the appeal of the denial of the motion to compel arbitration came only after the defendant was defaulted for failing to collaborate with the plaintiff in preparing a joint trial memorandum and after the plaintiff had been awarded a default judgment – to which the defendant had not objected. *See id.* at 179. Included in the plaintiff's motion for default judgment had been a request for attorneys' fees in the amount of $47,000. *See id.* Had the Second Circuit ordered the parties to arbitrate, plaintiff would have suffered a three-year delay and attorneys' fees equal to her compensatory damages, while her opponent would have gained for himself "the benefits of pretrial discovery that is often unavailable in an arbitral forum." *Id.* at 180. The Second Circuit found that compelling the plaintiff to arbitrate at that point would have been unduly prejudicial. *See id.*; *see also Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (holding that arbitration had been waived by protracted litigation over four years, including litigating issues to the highest courts of two states and petitioning the U.S. Supreme Court for a writ of certiorari).

The facts in this case are a far cry from those in *Slone*, and simply do not support Blakeslee's contention that it would be prejudiced by an order to arbitrate. The amount of time this case has been active is relatively minimal, no substantive motions have been filed, and the parties have yet to engage in any discovery. *See, e.g.*, *Brady v. Western Overseas Corp.*, No. 04cv2878, 2009 WL 1472736, at *3 (E.D.N.Y. May 22, 2009) (finding right to compel arbitration not waived despite five years' delay because there had been virtually no discovery or motions practice; the party resisting arbitration made no showing of prejudice; and the delay was the fault of both parties). As for Blakeslee's argument that it has been prejudiced by the unnecessary litigation expenses incurred to

9

date, the Second Circuit has been explicit that "legal expenses inherent in litigation, 'without more,' do not constitute prejudice requiring a finding of waiver." *Doctor's Associates*, 107 F.3d at 34 (quoting *Leadertex*, 67 F.3d at 26). The litigation expenses incurred in this case thus far should be minimal, and the majority of the work Blakeslee has done – the counterclaim and answer – can be profitably used in the arbitration. The time spent on the parties' Rule 26(f) report [doc. # 21] will not be of use in arbitration, but at oral argument, counsel for Blakeslee did not dispute that the bulk of the 26(f) report was prepared by Plaintiff's counsel. *Cf. Williamson v. Public Stores, Inc.*, No. 03CV1242, 2004 WL 491058, at *4 (D. Conn. Mar. 1, 2004) ("Plaintiff's preparation of initial discovery requests was not so burdensome or costly that requiring her to arbitrate would be unduly prejudicial."). In summary, there is essentially no evidence to support a finding of prejudice, and so the Court finds that New River has not waived its right to arbitrate.[1]

At the hearing on the motion, Blakeslee pressed the argument that New River's alleged failure to adhere to the express terms of the Subcontract provides a basis for finding waiver that is independent of the test for waiver described above. The Subcontract states that mediation is "a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." Subcontract § 6.1.1, Ex. A to Mem. in Supp. of Pl.'s Mot. [doc. # 27]. It provides further that "[I]n

---

[1] At oral argument, Defendant also asserted that it would be prejudiced by being forced into arbitration with New River because it has expended substantial resources defending a suit in Connecticut state court brought by The Hartford Fire Insurance Company as the subrogee of New River. *See Hartford Fire Ins. Co. a/s/o New River Elec. Corp. v. Blakeslee Arpai Chapman et al.*, No. HHD-CV-08-6003140-S (Conn. Sup. Ct. filed Mar. 23, 2009). However, New River submitted an affidavit from an individual at the insurance company with personal knowledge of that litigation, who testified that New River did not "influence, direct[] or control whatsoever" the decision to bring that action in the first place or the forum in which it was brought. *See* Aff. of Joanne Crowley [doc. # 39] § 8. Blakeslee has not brought forth any evidence to suggest otherwise, and therefore, it has failed to explain why the Court should consider The Hartford's state case in deciding whether New River waived its right to arbitrate.

no event shall [a demand for arbitration] be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations." *Id.* § 6.2.3.  Blakeslee says that New River violated one or both of these provisions, and, relying exclusively on a 1954 Connecticut Supreme Court case, *Batter Building Materials Co. v. Kirschner*, 142 Conn. 1, asserts that New River's failure to adhere to the express provisions of the Subcontract means New River waived its right to arbitrate.  *See Batter Building*, 142 Conn. at 11-12 ("[F]ailure to follow the steps agreed upon as a prerequisite to the right to arbitrate may bring about waiver."); *see also* Def.'s Mem. in Opp'n [doc. # 30] at 9-10; Def.'s Sur-Reply [doc. # 33] at 5-6.

The flaw in Blakeslee's reasoning is that arguments about whether or not New River's alleged failure to follow the Subcontract's procedural prerequisites to invoking arbitration constituted waiver must be submitted to the arbitrator, at least in the first instance.  The arbitration clause in § 6.2.1 of the Subcontract is a broad one, stating that "Any claim arising out of or related to this Subcontract . . . shall be subject to arbitration."  Mem. in Supp. of Pl.'s Mot. [doc. # 27] Ex. A.  The Subcontract also incorporates by express reference the Construction Industry Arbitration Rules of the American Arbitration Association.  *See id.* § 6.2.2.  Those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Construction Industry Arbitration Rules R-9(a).  The parties' use of a broad arbitration clause and their express incorporation of rules that give the arbitrator the authority to determine arbitrability of a dispute constitutes "clear and unmistakable evidence" that they intended to arbitrate the very issue that Blakeslee has now raised before this Court.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1983); *Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 124-5 (2d Cir. 2003) ("[B]ecause the parties' arbitration

agreement is broadly worded . . . , and because it provides for arbitration to be conducted under the rules [that] assign the arbitrator initial responsibility to determine issues of arbitrability, we conclude that the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability."); *Bell v. Cendant Corp.*, 293 F.3d 563, 568 (2d Cir. 2002) ("Under Connecticut law, an intent to refer the matter to the arbitrator may be indicated by an express provision or through the use of broad terms to describe the scope of arbitration, such as 'all questions in dispute and all claims arising out of' the contract.'") (citations omitted); *Sidell v. Structured Settlement Investments*, No. 08CV710, 2009 WL 103518 (D. Conn. Jan. 14, 2009) (granting a motion to compel arbitration despite a waiver argument because there was "clear and unmistakable evidence of intent to arbitrate arbitrability" in the form of a broad arbitration clause and the incorporation by reference of rules that gave arbitrators the authority to determine their own jurisdiction); *Congress Construction Co. v. Geer Woods, Inc.*, No. 05CV1665 (MRK), 2005 WL 3657933, at *2-4 (D. Conn. Dec. 29, 2005) (same).

Even assuming that the decisions of the Connecticut courts were instructive on the reach of the FAA, it is important to note that the Connecticut Supreme Court reached this identical conclusion in considering a challenge under *Batter Building* – the very case relied upon by Blakeslee – more than thirty-five years ago. In *Gary Excavating, Inc. v. North Haven*, 164 Conn. 119 (1972), it held that:

> Failure to follow the steps agreed on as prerequisites to the right to arbitration may bring about waiver; *Batter Building Materials Co. v. Kirschner*, 142 Conn. 1, but in the present case, by virtue of the broad scope of [the arbitration clause] of the contract, the appropriate body to hear claims regarding procedural prerequisites to arbitration must be the arbitration panel.

*Gary Excavating*, 164 Conn. at 125.  Therefore, at least in the first instance, and in accordance with the parties' agreement, Blakeslee must submit this argument to the arbitrators.

Blakeslee's related argument, relying on *Duplan Corporation v. W.B. Davis Hosiery Mills, Inc.*, 442 F. Supp. 86, 89 (S.D.N.Y. 1977), that "the Court lacks jurisdiction to compel the arbitration of claims that fall outside of the [temporal] scope of the arbitration agreement," Def.'s Mem. Opp'n [doc. # 30] at 13, is similarly flawed.  *Duplan* involved a dispute about whether there was an agreement to arbitrate at all – not whether particular claims fell within its scope.  Here, there is no dispute that there is an arbitration agreement; Blakeslee even filed an arbitration demand relying on it.  Instead, Blakeslee argues that because of a defense that it wishes to assert, some of New River's claims are no longer within the scope of the arbitration agreement.  Here again, the parties' agreement to arbitrate is broad and requires that the parties submit all of their arguments regarding the Subcontract to the arbitrator, at least in the first instance.  *See Shaw Group*, 322 F.3d at 124-5.

**Therefore, and for the foregoing reasons, Plaintiff's Motion to Stay Pending Arbitration and to Compel Arbitration [doc. # 26] is GRANTED.  This case shall be administratively closed pending the outcome of the arbitration.  The parties shall file a joint status report with the Court by May 14, 2010, unless the arbitration is concluded sooner.**

IT IS SO ORDERED.

/s/       Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **December 17, 2009.**